J-S21027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RALPH W. SUMMERS, JR. | : | |
| | : | |
| Appellant | : | No. 2466 EDA 2024 |

Appeal from the PCRA Order Entered August 29, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0006926-2016

BEFORE:   KUNSELMAN, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KING, J.:                                **FILED JULY 24, 2025**

Appellant, Ralph W. Summers, Jr., appeals *pro se* from the order entered in the Delaware County Court of Common Pleas, which denied his petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. During the investigation of a shooting at an apartment complex, police officers came across Appellant sitting on a bench in the laundry room.  Beside him was a red cooler and plastic bag containing firearms, marijuana, a scale, rolling papers, and unused baggies with a design imprinted thereon.  The Commonwealth charged him with various offenses, and on July 14, 2017, a jury convicted Appellant of persons not to possess firearms, firearms not to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

be carried without a license, possession of a firearm with manufacturer number altered, possession of an instrument of crime, possession of a controlled substance, possession with intent to deliver, and possession of drug paraphernalia. On September 7, 2017, the court sentenced Appellant to an aggregate term of 141 to 282 months' imprisonment. This Court affirmed Appellant's judgment of sentence on June 26, 2018, and our Supreme Court denied allowance of appeal on June 10, 2020. *See Commonwealth v. Summers*, No. 3419 EDA 2017 (Pa.Super. filed Jun. 26, 2018) (unpublished memorandum), *appeal denied*, 661 Pa. 116, 235 A.3d 1072 (2020).

On August 26, 2021, Appellant filed the instant, timely PCRA petition *pro se*. The court appointed PCRA counsel, and following several substitutions of counsel, PCRA counsel filed an application to withdraw and no-merit letter pursuant to *Turner/Finley*.[2] On June 18, 2024, the court granted counsel's application to withdraw. On June 28, 2024, the court sent Appellant notice pursuant to Pa.R.Crim.P. 907 that his petition would be dismissed without a hearing. On August 29, 2024, the PCRA court formally dismissed Appellant's petition.

On September 10, 2024, Appellant timely filed a *pro se* notice of appeal. On September 20, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On September 30, 2024, Appellant timely complied.

_____

[2] *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

- 2 -

On appeal, Appellant raises the following issues for review:

A. The PCRA Court erred in denying relief where [Appellant] was denied effective assistance of counsel as guaranteed by the United States Constitution when trial counsel failed to object during trial when the PCRA court abused its discretion when it denied [Appellant's] request for a continuance to retain counsel of [Appellant's] choice, as to being represented by the Public defender Office.

B. The PCRA Court erred in denying relief where trial counsel was ineffective for failing to object when the Commonwealth motion to strike the [prospective] juror for cause, solely because the [prospective] juror informed the court during *voir dire*, that said juror [supported] the black lives matter [organization], was granted, which deprived petitioner of a fair and impartial jury trial and due process of the law. In violation of his Constitutional rights under the sixth and fourteenth Amendments to the United States Constitution.

C. The PCRA Court erred in denying relief where [Appellant] was denied effective assistance of counsel as guaranteed by the United States Constitution when PCRA Counsel failed to raise in an amended PCRA Petition that [Appellant] was cumulatively prejudiced by Direct Appeal Counsel, as well as Trial Counsel's ineffectiveness where all previous counsel [were] ineffective for failing to cite controlling United States Supreme Court [precedent], when trial court erred in violating [Appellant's] motion in [*limine*] when questioning a witness for the Commonwealth and caused the witness to introduce highly prejudicial inadmissible [hearsay evidence], which deprived petitioner of his right to cross examine, and confront the witness [against] him, denying him a fair and impartial trial.

(Appellant's Brief at VI) (citations to the record omitted).

"Our standard of review of [an] order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." ***Commonwealth v. Parker***, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting

*Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa.Super. 2013)). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo.*" *Commonwealth v. Prater*, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021).

Appellant's issues on appeal concern the effective assistance of counsel. "Counsel is presumed to have rendered effective assistance." *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has forgone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175,

179 A.3d 6 (2018) (quoting **Commonwealth v. Pierce**, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)).  "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim."  **Commonwealth v. Poplawski**, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting **Commonwealth v. Geathers**, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests."  **Commonwealth v. Kelley**, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting **Pierce**, **supra** at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success.  Counsel's decisions will be considered reasonable if they effectuated his client's interests.  We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

**Commonwealth v. King**, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting **Sandusky, supra** at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding."  **Commonwealth v. Spotz**, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted).  "[A] criminal

defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3, 33, 807 A.2d 872, 883 (2002)).

In his first issue, Appellant claims that trial counsel provided ineffective assistance for failing to object at trial when the court denied Appellant's request for a continuance to retain private counsel, rather than a public defender. Appellant argues that he was entitled to the counsel of his choice and claims that counsel's failure to object prejudiced him. Appellant concludes that the court erred in denying his PCRA petition on this ground, and this Court must grant relief. We disagree.

With respect to the right to counsel, the Supreme Court of Pennsylvania has stated:

> The right to counsel is guaranteed by both the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution. In addition to guaranteeing representation of the indigent, these constitutional rights entitle an accused "to choose at his own cost and expense any lawyer he may desire." *Commonwealth v. Novak*, 395 Pa. 199, 213, 150 A.2d 102, 109, *cert. denied,* 361 U.S. 882, 80 S.Ct. 152, 4 L.Ed.2d 118 (1959). The right to "counsel of one's own choosing is particularly significant because an individual facing criminal sanctions should have great confidence in his attorney." *Moore v. Jamieson,* 451 Pa. 299, 307-08, 306 A.2d 283, 288 (1973).
>
> We have held, however, that the constitutional right to counsel of one's choice is not absolute. *Commonwealth v. Robinson,* 468 Pa. 575, 592–93 & n. 13, 364 A.2d 665, 674 & n. 13 (1976). Rather, "the right of the accused to choose

his own counsel, as well as the lawyer's right to choose his clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice." *Id.* at 592, 364 A.2d at 674 (internal quotations omitted). Thus, this Court has explained that while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably "clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice." *Commonwealth v. Baines*, 480 Pa. 26, 30, 389 A.2d 68, 70 (1978). At the same time, however, we have explained that "'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.'" *Robinson*, 468 Pa. at 593-94, 364 A.2d at 675 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)).

*Commonwealth v. Prysock*, 972 A.2d 539, 541-42 (Pa.Super. 2009) (quoting *Commonwealth v. McAleer*, 561 Pa. 129, 136-37, 748 A.2d 670, 673-74 (2000)).

Further, the Rules of Criminal Procedure provide that "[a] motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons." Pa.R.Crim.P. 122(c). "To satisfy this standard, a defendant must demonstrate he has an irreconcilable difference with counsel that precludes counsel from representing him." *Commonwealth v. Wright*, 599 Pa. 270, 296, 961 A.2d 119, 134 (2008). Irreconcilable differences must be more than simply a "strained" relationship with counsel, lack of faith in counsel, or a difference of opinion with trial strategy. *Commonwealth v. Floyd*, 937 A.2d 494, 497-98, 500 (Pa.Super. 2007). "Whether a motion for change of counsel should be granted is within the sound discretion of the trial court and will not be disturbed on appeal

absent abuse of discretion." ***Commonwealth v. Cook***, 597 Pa. 572, 610, 952 A.2d 594, 617 (2008) (citation omitted).

Instantly, in evaluating this claim, the PCRA court explained that the case had been before the trial court since November 30, 2016, and had five trial listings prior to the July 11, 2017 commencement of trial. (***See*** PCRA Court Opinion, filed 12/19/24, at 17). Further, the court noted that Appellant's request for a continuance was made mere moments before jury selection, and that Appellant had offered nothing more than a "bald and modestly passing reference" to wanting to obtain private counsel. (***See id.***) The PCRA court continued that Appellant did not offer any details regarding his efforts to retain private counsel, including the name of any lawyers contacted, or his family's efforts to raise funds needed for a particular attorney. (***Id.***) The court further noted that it had repeatedly advised Appellant that he was free to move forward with his public defender, proceed with self-representation, or secure a private attorney's professional services, but that Appellant had not done so by the time of jury selection. (***Id.***) Therefore, the PCRA court concluded that trial counsel was not ineffective for failing to object to the court's denial of the continuance, because such claim would have been meritless. (***See id.*** at 18).

The record supports the court's conclusions. Trial was originally scheduled for February 21, 2017. On February 14, 2017, Appellant filed a *pro se* "Motion for Ineffective Assistance of Counsel and Appointment of New Counsel." The record also indicates that Appellant made an oral motion for

new counsel in open court around this time. The court denied the motion as moot.[3]

Appellant made another request for new counsel in March 2017. At this point, Appellant complained that counsel did not "go after any of my witnesses. He didn't go after any of the issues that I brought up to him. What kind of defense do I have if I have someone who is not going to do anything I ask him to do." (N.T. Hearing, 3/28/17, at 5). Counsel explained to the court that Appellant frequently changed his mind regarding the course of action he wished to take, and often made conflicting requests, and that he had requested Appellant advise him of his requests in writing to avoid further confusion. (*See id.* at 7). The court advised Appellant that if there were witnesses he wanted to call, he should give their names, addresses, and phone numbers to counsel. (*Id.* at 8). Appellant responded that he had "more concerns than that" but when asked to articulate his concerns, stated, "I don't understand what is going on here" and asked why he should put something in writing to someone he did not trust. (*Id.*) The court informed Appellant that he was entitled to one appointed attorney free of charge, and that if he was dissatisfied with appointed counsel, he could proceed *pro se* or retain new counsel. (*Id.* at 4-5). Ultimately, trial was again rescheduled until May 1, 2017.

On May 1, 2017, trial was rescheduled again until June 5, 2017. DNA

_____

[3] It appears from the record that the court denied the motion as moot because the court continued trial to March 28, 2017 for other reasons.

results were still outstanding at this point. On June 5, 2017, trial was rescheduled for July 10, 2017. Jury selection finally began on July 11, 2017. On that date, Appellant made a request for new counsel because he did not believe that current counsel wanted to "win it." (*See* N.T. Trial, 7/11/17, at 4). The court denied the request, noting that the issue had already been discussed, and that trial counsel had practiced competently before the court for over eight years.

On this record, Appellant did not demonstrate "substantial" reasons for or irreconcilable differences with counsel. *See Wright, supra*; *Prysock, supra*. Further, Appellant had ample opportunity to secure new counsel in the time between the original trial date and jury selection, but he failed to do so. Because the trial court did not abuse its discretion in denying Appellant's request, counsel cannot be ineffective for failing to raise a meritless claim. *See Cook, supra*. *See also Poplawski, supra*. Thus, Appellant's first issue merits no relief.

In Appellant's second issue, he asserts that trial counsel provided ineffective assistance for failing to object to the Commonwealth's strike of a potential juror for cause. Appellant contends that prospective Juror #23 had informed the court during *voir dire* that he supported the Black Lives Matter movement.[4] The court allowed the Commonwealth's strike, and trial counsel

_____

[4] Appellant also quoted the *voir dire* of prospective Jurors #43 and #44, who also initially stated they would be less likely to believe a police officer, but
*(Footnote Continued Next Page)*

did not object. Appellant insists that he was deprived of a fair and impartial jury such that counsel's inactions prejudiced him, and that there was no reasonable basis for the failure to object. Appellant concludes that the court erred in denying his PCRA petition on these grounds, and this Court must grant relief. We disagree.

Regarding *voir dire*, the Pennsylvania Supreme Court has stated:

> That the scope of *voir dire* is in the discretion of the trial court is well-settled Pennsylvania law. The opportunity to observe the demeanor of the prospective juror and the tenor of the juror's answers is indispensable to the judge in determining whether a fair trial can be had in the community. Claims of impartiality by prospective jurors are subject to scrutiny for credibility and reliability as is any testimony, and the judgment of the trial court is necessarily accorded great weight. Decisions of the trial judge concerning *voir dire* will therefore not be reversed in the absence of palpable error.

***Commonwealth v. Ellison***, 588 Pa. 1, 7, 902 A.2d 419, 423-24 (2006) (internal citations and quotations omitted).

> The test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor.... It must be determined whether any biases or prejudices can be put aside on proper instruction of the court.... A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates

---

Appellant has failed to advance any relevant argument regarding these jurors. Further, neither of these jurors was stricken for cause. Thus, we will not further discuss prospective Jurors #43 and #44.

- 11 -

a likelihood of prejudice by his or her conduct or answers to questions.

**Commonwealth v. Briggs**, 608 Pa. 430, 498-99, 12 A.3d 291, 333 (2011) (quoting **Commonwealth v. Cox**, 603 Pa. 223, 249, 983 A.2d 666, 682 (2009)).

Instantly, the PCRA court concluded that based upon *voir dire*, prospective Juror #23 could not have been a fair and impartial juror due to his biases, and that it was not an abuse of discretion for the court to grant the challenge for cause. (**See** PCRA Court Opinion at 20). Specifically, the PCRA court explained that prospective Juror #23 did not simply state that he supported the Black Lives Matter movement. Rather, the court explained:

> [Prospective Juror #23] … unquestionably conceded to the presiding judge a relevant partiality, neglected to respond to the court's general *voir dire* query material to such a bias, voiced argumentative displeasure with certain phrasing of the questionnaire form required under Pa.R.Crim.P. 632, and ambiguously offered that his acknowledged partiality was in flux and at best slowly evolving.
>
> Judge Bradley, the presiding jurist, was in the immediate proximity of [prospective Juror #23] throughout his individual *voir dire* and asked [prospective Juror #23] direct questions. Judge Bradley …, after listening to the answers of [prospective Juror #23] and observing his demeanor made a fact finding credibility determination as to that which [prospective Juror #23] proffered as part of his deliberate processes in allowing the Commonwealth's cause strike.

(**See id.**) (citations omitted). Our review of the record supports these conclusions. (**See** N.T. Trial, 7/11/17, at 44-45). On this record, we cannot conclude that the court—with the best opportunity to observe the demeanor and conduct of the jurors—abused its discretion in finding that, by his conduct,

- 12 -

prospective Juror #23 should be stricken for cause. *See Briggs, supra*; *Ellison, supra*. Counsel cannot be ineffective for failing to raise a meritless claim. *See Poplawski, supra*. Further, Appellant has not articulated an argument, beyond a boilerplate assertion, that the outcome of the trial would have been different if the court had not stricken prospective Juror #23. *See Spotz, supra*. For these reasons, Appellant's second issue does not merit relief.

Appellant's final issue is somewhat difficult to decipher, but it appears that he attempts to argue trial counsel provided ineffective assistance related to the admission of certain hearsay statements. Specifically, Appellant challenges the testimony of Sergeant Larry Moore concerning the officers' response to an active shooter situation, and of Officer Michael Molineaux, regarding the circumstances of his encounter with Appellant. Appellant argues that counsel should have objected to admission of this evidence, and the failure to object deprived Appellant of his right to cross-examine and confront witnesses. Appellant concludes that the court erred by denying his PCRA petition on this ground, and that this Court must grant relief. We disagree.

Here, the record indicates that prior to opening statements, trial counsel moved to prohibit the Commonwealth from introducing any testimony repeating what the witnesses at the crime scene had reported to 911, where those witnesses were unavailable to testify at trial. The court explained that it would permit the Commonwealth's police witnesses to testify that police received a 911 call about a shooting, which ultimately brought them to the

apartment building wherein police discovered Appellant. Nevertheless, the court excluded any reference to statements from the non-testifying crime scene witnesses that mentioned Appellant's name or that he was in the laundry room of the building with a gun. (**See** N.T. Trial, 7/12/17, at 21-23).

At trial, Officer Molineaux began to testify on direct examination that while interviewing witnesses to the active shooter situation, the officer received the name "Ralph" (Appellant's first name). (**See id.** at 65). The court immediately stopped Officer Molineaux from testifying any further, and trial counsel requested a sidebar. (**Id.**) Trial counsel then requested a mistrial. (**Id.** at 66). The court denied the motion for a mistrial, issuing a cautionary instruction to the jury instead, and striking Officer Molineaux's testimony from the record. (**Id.** at 67). Thus, the record belies Appellant's contention that trial counsel did not object to the challenged testimony, and Appellant's ineffectiveness claim lacks arguable merit. **See Smith, supra**.

Moreover, Appellant challenged the denial of his motion for a mistrial on direct appeal. **See Summers, supra**. This Court determined that the trial court had not abused its discretion in denying the motion for a mistrial because the court stopped Officer Molineaux from continuing his testimony, gave a cautionary instruction, and struck the testimony. **See id.** Therefore, this Court determined that Appellant had not been prejudiced to the extent of denying him a fair trial. **Id.** As this Court has already decided that Appellant did not suffer prejudice based on the improper admission of the challenged hearsay statements, Appellant's related claim of trial counsel's ineffectiveness

- 14 -

also fails because Appellant cannot establish that, but for counsel's errors, the results of trial would have been different. **See Spotz, supra**.

Regarding Sergeant Moore's challenged testimony, the record shows that during the sergeant's testimony, he began to testify about speaking to the women who had called 911, and asked them if they had any idea where the shooter might be or where he was last seen; and these statements directed Sergeant Moore to the "N" building of the apartment complex. At this point, trial counsel objected and stated that counsel had expressly sought to prevent admission of this type of testimony prior to trial. The parties then had a side-bar with the court and discussed how the testimony would proceed. The court stated that the sergeant was permitted to give some background about the investigation as foundational but could not mention Appellant's name as referenced by the witnesses who had called 911. Thus, the court permitted the sergeant to explain that he was ultimately directed to the "O" building, where Appellant was found. (**See** N.T. Trial, 7/12/17, at 21-26). Therefore, the record belies Appellant's claim that trial counsel failed to object to Sergeant Moore's testimony, such that Appellant's ineffectiveness claim lacks arguable merit. **See Smith, supra**. Appellant's final issue merits no relief. Accordingly, we affirm the order denying PCRA relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>7/24/2025</u>